## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
**Tampa Division**

Case No.:

8:21 cv 2155 CEH-SPF

Jaquelyn Zimmerman,

                    *Plaintiff,*

v.

AssuredPartners, Inc., and;

FIA LIQUIDATION COMPANY INC.
a/k/a
Fiorella Insurance Agency, Inc.,


                    *Defendants.*

(1) INJUNCTIVE RELIEF
REQUESTED


(3) JURY TRIAL DEMANDED

## **COMPLAINT**

1.      Plaintiff Jaquelyn Zimmerman ("Plaintiff") brings this civil action

against Defendants AssuredPartners, Inc. and FIA LIQUIDATION COMPANY,

INC. a/k/a Fiorella Insurance Agency, Inc. (collectively, "Defendants") and alleges

as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and

experiences, and, as to all other matters, upon information and belief, including

investigation conducted by Plaintiff.

1



2.     This is a civil action under the Telephone Consumer Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and the Florida Telephone Solicitation Act,  Fla. Stat. § 501.059 ("FTSA"), as amended by Senate Bill No. 1120.[1]

3.     Defendants are doing business within the insurance industry. To promote their services, Defendants engage in aggressive unsolicited marketing harming Plaintiff.

4.     Through this action, Plaintiff seeks injunctive relief to halt Defendants' illegal conduct, which has resulted in invasion of privacy, annoyance, intrusion on seclusion, trespass, conversion, nuisance and disruption of Plaintiff 's daily life, a loss of value realized for the monies paid to Plaintiff 's  wireless carrier for the receipt of the illegal robocalls, a loss of the use and enjoyment of Plaintiff's cellular telephone, including the related data, software, and hardware components, and wear and tear on such components including the consumption of battery life that result from the placement and receipt of such unwanted robocalls, among other harms. Plaintiff also seeks statutory damages and other available legal or equitable remedies.

## **INTRODUCTION**

5.     As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for

---

[1] The amendment to the FTSA became effective on July 1, 2021.

robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.    When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7.    By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8.    The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9.    Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

10.   According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in June 2021 alone, at a rate of 148 million calls per day. www.robocallindex.com (last visited July 13, 2021)[2].

11.   The FCC also has received an increasing number of complaints about

---

[2] https://www.robocallindex.com

unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and

232,000 complaints in 2018. FCC, Consumer Complaint Data Center,

www.fcc.gov/consumer-help-center-data[3].

12.     "Robocalls and telemarketing calls are currently the number one

source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls*

(July 22, 2016), statement of FCC chairman.[4]

13.     "The FTC receives more complaints about unwanted calls than all

other complaints combined." Staff of the Federal Trade Commission's Bureau of

Consumer Protection, *In re Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket

No. 02-278 at 2 (2016)[5]

## JURISDICTION AND VENUE

14.     This Court has federal question subject matter jurisdiction over this

action pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone

Consumer Protection Act, 47 U.S.C. §§ 227, *et seq.* ("TCPA").

15.     The Court has personal jurisdiction over Defendants and venue is

proper in this District because both Defendants direct, market, and provide their

---

[3] https://www.fcc.gov/consumer-help-center-data
[4] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[5] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftcbureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf

business activities to this District, and because Defendants' unauthorized marketing scheme was directed by Defendants to Plaintiff in this District.

## PARTIES

16.     Plaintiff is an individual who at all times relevant to this matter was a resident of Manatee County, Florida.

17.     Defendant, AssuredPartners, Inc. ("Defendant Assured") is a Florida limited liability company whose principal office is located at 200 Colonial Center Parkway Suite 140 Lake Mary, FL 32746. Defendant Assured directs, markets, and provides its business activities throughout the United States, including throughout the state of Florida.

18.     Defendant, FIA LIQUIDATION COMPANY, INC., ("Defendant FIA") is a Florida limited liability company whose principal office is located at 2300 SE Monterey Rd, Ste 200, Stuart, FL 34996. Defendant FIA directs, markets, and provides its business activities throughout the United States, including throughout the state of Florida.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

19.     The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

20.     The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

21.     In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

22.     The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC,* 788 F.3d 814, 820 (8th Cir. 2015).

23.     "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.,* 705 F.3d 913, 918 (9th Cir. 2012)).

6

24.     The TCPA also makes it unlawful for any entity to make more than one call in a 12-month period to any number that is registered with the National Do-Not-Call Registry or that entity's company specific do-not-call list. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2) & (d). The TCPA provides a private cause of action to persons receiving calls in violation of 47 U.S.C. § 227(c)(5).

25.     The FCC has issued rulings and clarified that in order to obtain an individual's consent, a clear, unambiguous, and conspicuous *written* disclosure must be provided to the individual. *See 2012 FCC Order, 27 FCC Rcd. at 1839* ("[R]equiring prior written consent will better protect consumer privacy because such consent requires conspicuous action by the consumer — providing permission in writing — to authorize autodialed or prerecorded telemarketing calls....").

26.     According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

27.    In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

28.    To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'*clear and conspicuous disclosure*' of the consequences of providing the requested consent....and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

29.    The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, *a court must evaluate the ultimate purpose of the communication. See Golan v. Veritas Entm't, LLC,* 788 F.3d 814, 820 (8th Cir. 2015).

8

30.    "Neither the TCPA nor its implementing regulations '*require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" Id. (citing Chesbro v. Best Buy Stores, L.P., 705 F.3d 913, 918 (9th Cir. 2012)).*

31.    The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 *FCC Rcd.* 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call or in the future.

32.    In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd.* 14014, ¶ 136 (2003).

33.    If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd.* 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

34.     As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, No. 14-55980, 2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc. v. Robin*s, 136 S. Ct. 1540, 1549 (2016) (emphasis original).

35.     The FCC has "repeatedly acknowledged the existence of vicarious liability under the TCPA." *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing *In re Joint Petition Filed by Dish Network, LCC*, 28 FCC. Rcd. 6574, 6574 (2013)). Principles of apparent authority and ratification may also provide a basis for vicarious seller liability for violations of section 227(b). *See Thomas v. Taco Bell Corp.*, 582 F. App'x 678 (9th Cir. 2014) (citing 28 F.C.C. Rcd. at 6590 n. 124). A ratification occurs when the benefits of the purportedly unauthorized acts are accepted with full knowledge of the facts under circumstances demonstrating the intent to adopt the unauthorized arrangement. *Stalley v. Transitional Hosps. Corp. of Tampa, Inc.*, 44 So. 3d 627, 631 (Fla. 2d DCA 2010).

## THE FLORIDA TELEPHONE SOLICITATION ACT

36.     The Florida Telephone Solicitation Act, Fla. Stat. § 501.059, as amended by Senate Bill No. 1120, prohibits any person or business to  "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers for the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

37.     A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(g).

38.     "Prior express written consent" means an agreement in writing that:

1.       Bears the signature of the called party;

2.      Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a pre recorded voicemail;

11

3.     Includes the telephone number to which the signatory authorizes a

telephonic sales call to be delivered; and 4.  Includes a clear and

conspicuous disclosure informing the called party that:

a. by executing the agreement, the called party authorizes the

person making or allowing the placement of a telephonic sales call

to deliver or cause to be delivered a telephonic sales call to the

called party using an automated system for the selection or dialing

of telephone numbers or the playing of a recorded message when

a connection is completed to a number called; and

b. he or she is not required to directly or indirectly sign the written

agreement or to agree to enter into such an agreement as a

condition of purchasing any property, goods, or services. Fla. Stat.

§ 501.059(1)(g).

## **FACTUAL ALLEGATIONS**

39.     Defendant FIA owns and operates  an insurance business which engages

in aggressive marketing tactics for selling health insurance throughout the US.

According to Defendant FIA's website, it is one of the fastest growing agencies in the

entire country.[6]

---

[6] https:/www./fiorellainsurance.com/about_v1/

40.     Defendant Assured is "one of the largest brokers in the nation with

offices in 38 states and two countries[7], and it acquired Defendant FIA on or about

March 11, 2021[8].

41.     A March 11, 2021 Press Release ("the Release") which can be found on

Defendant Assured's website further confirms its acquisition of Defendant FIA:



42.     The Release on Defendant Assured's website also confirms

that Defendant Assured  is responsible for all operations of FIA, and

in fact Assured Partners Inc. is just another alias or a brand name used by Defendant

---

[7] https://www.assuredpartners.com/About-AssuredPartners
[8]
https://www.assuredpartners.com/blog/detail/bid/519/ap-in-the-news/assuredpartners-announces-acquisition-of-fiore
lla-insurance-agency-inc

FIA.

43.     Defendant FIA, operated by Defendant Assured Partners, Inc., places unsolicited telemarketing calls, despite having never obtained the necessary consent required to place the calls, to consumers' residential and mobile telephone numbers which are listed on the National Do Not Call Registry ("DNC"), including Plaintiff's telephone number.

44.     Plaintiff registered her cell phone number on the DNC on December 11, 2001.

45.     Plaintiff's number is for personal use and not associated with a Business.

46.     Plaintiff is the subscriber and sole user of the cellular telephone number (***)***-6830 (the "6830 Number") and is financially responsible for phone service to the 6830 Number.

47.     In or about March 2017, Plaintiff started receiving a series of unsolicited calls from Defendants. Most of these calls were placed using phone numbers beginning with area code 941, which is the same as Plaintiff's area code, and when Plaintiff anwasnered the calls or later retrieved the pre recorded voicemails left by Defendants, the prerecorded message clearly stated that Defendant FIA was the business making the illegal calls:

48.     Plaintiff received the following calls from the Defendant:

          i. On June 16, 2021, at 4:42 PM from 941-759-8333 Plaintiff

answered this call, but there was silence on the call.

ii. On June 17, 2021, at 2:38 PM from 941-759-8333. Plaintiff

did not answer this call. However, Defendants left a voicemail using a

prerecorded voice. A transcription of that voicemail:



This is Crystal with fiorella insurance your local agency for Florida Blue. Our health coverage enrollment process is quick and easy and we can get you into a health plan. As low as $0 per month. Press one to apply now. Let us help you we here at fiorella strive to find the best plan for you. We have plans with $0 deductibles and co-pays this year doctor as long as a dollar press one now to speak to a licensed agent. Our promise is to help guide you through all of your wonderful Health Options for this year. Make sure you get you and your family into a budget-friendly Health Plan and get the coverage that you need. Press one to enroll today and get your health coverage. Press 9 to be removed from our list.

49.     On June 18, 2021 Plaintiff attempted to call back each and every number Defendants utilized by Defendants to call Plaintiff to instruct Defendants to stop calling her cell phone, but could not get a live operator on the line.

50.     Each of these numbers when called back, are answered by the same pre-recorded voice message which states the company name as "Fiorella Insurance Company operated by Assured Partners" Identifying that these numbers belong to Defendant FIA  and are operated by Defendant Assured.

51.     Plaintiff is not on Medicare nor has Blue Cross health insurance and was not looking for any Medicare or Blue Cross Blue Shield related products or services and did not give consent to the Defendants to call her cell phone.

51.     Defendants' robocalls were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

53.     Defendant's robocalls constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., selling Plaintiff health insurance related products or services.

54.     The information contained on the prerecorded messages advertises Defendants' various discounts and promotions, which Defendant uses to promote their business.

55.     At no point in time did Plaintiff provide Defendant with her express written consent to be contacted using an ATDS.

56.    The impersonal and generic nature in addition to the use of a prerecorded voice of Defendants' robocalls demonstrates that Defendants utilized an ATDS in transmitting the messages.

57.    The robocalls originated from the following  telephone number: 941-759-8333, which upon information and belief are owned and operated by Defendants.

58.  The number referenced above used by Defendants are known as a "long code," a standard 10-digit code that enables Defendants to transmit prerecorded calls *en masse*, while deceiving recipients into believing that the robocall was personalized and transmitted from a telephone number operated by an individual.

59.    Long codes work as follows: Private companies known as telephonic gateway providers have contractual arrangements with mobile carriers to transmit telephonic traffic. These telephonic gateway providers send telephonic traffic to the mobile phone networks' telephonic centers, which are responsible for relaying those calls to the intended mobile phone. This allows for the transmission of a large number of telephonic calls from a long code.

60.    Specifically, upon information and belief, Defendants utilized a combination of hardware and software systems to transmit the calls at issue in this case. The systems utilized by Defendants have the capacity to store telephone numbers using a random or sequential number generator, and to dial such numbers from a list without human intervention.

61.     To transmit the calls, Defendants used a platform (the "Platform") that permitted Defendants to transmit thousands of automated robocalls without any human involvement.

62.     The Platform has the capacity to store telephone numbers, which capacity was in fact utilized by Defendants.

63.     The Platform has the capacity to generate sequential numbers, which capacity was in fact utilized by Defendants.

64.     The Platform has the capacity to dial numbers in sequential order, which capacity was in fact utilized by Defendants.

65.     The Platform has the capacity to dial numbers from a list of numbers, which capacity was in fact utilized by Defendants.

66.     The Platform has the capacity to dial numbers without human intervention, which capacity was in fact utilized by Defendants.

67.     The Platform has the capacity to schedule the time and date for future transmission of prerecorded robocalls, which occur without any human involvement.

68.     To transmit the messages at issue, the Platform automatically executed the following steps:

> a. The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed;
>
> b. The Platform then generated each number in the sequential order listed and combined each number with the content of

Defendants' prerecorded call to create "packets' ' consisting of one telephone number and the content of the prerecorded call.;

c.  Each packet was then transmitted in the sequential order listed to an telephonic aggregator, which acts as an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers, including Plaintiff.

d.  Upon receipt of each packet, the telephonic aggregator transmitted each packet–automatically and with no human intervention–to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendants. Each mobile carrier then transmitted the prerecorded call to its customer's mobile telephone.

69.    The above execution of these instructions occurred seamlessly, with no human intervention, and almost instantaneously. Indeed, the Platform is capable of transmitting thousands of robocalls following the above steps in minutes, if not less.

70.    Further, the Platform "throttles" the transmission of the robocalls depending on feedback it receives from the mobile carrier networks. In other words, the Platform controls how quickly calls are transmitted depending on network congestion. The Platform performs this throttling function automatically and ***does not allow a human to control the function.***

71.     Defendants' unsolicited robocalls caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendants' robocalls also inconvenienced Plaintiff and caused disruption to her daily life.

72.     Specifically, Plaintiff estimates that she has wasted fifteen to thirty seconds reviewing each of Defendant's unwanted calls. Each time Plaintiff had to stop what she was doing to either retrieve her phone and/or look down at the phone to determine who was calling.

73.     Further, Defendants hounded Plaintiff with persistent calls, including early in the morning and late at night, during the week. Plaintiff was at home when she received many of these messages, which resulted in an audible sound, i.e., the constant ringing of her cell phone, and the disturbance of the domestic peace of Plaintiff's home.

74.     For example, the following activities were interrupted as a result of Defendant's unsolicited calls: Plaintiff was woken up from her sleep on numerous occasions as a result of Defendants' persistent calls.

75.     As of September 10, 2021, Plaintiff has received approximately 300 individual unsolicited telemarketing robocalls from Defendants through the use of an ATDS.

75.     Next, Plaintiff wasted approximately 670 hours investigating, researching and preparing for this case in order to stop Defendants' unwanted calls.

77.     In all, Defendant's violations of the TCPA and the FTSA caused Plaintiff to waste at least 700 hours of her time in addressing and attempting to stop Defendants' solicitations.

## COUNT I
## Violations of the TCPA, 47 U.S.C. § 227(b)
### (Against all Defendants)

78.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

79.     It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

80.     Defendants–or third parties directed by Defendants–used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephone of Plaintiff.

81.     These calls were made without regard to whether or not Defendants had first obtained express permission from the called party to make such calls. In fact, Defendants did not have prior express consent to call the cellular telephone of Plaintiff when its calls were made.

82.     Defendants have, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phone of Plaintiff without her prior express written consent.

83.    Defendants knew that it did not have prior express consent to make these calls, and knew or should have known that it was using equipment that constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

84.    As a result of Defendants' conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff was harmed and is entitled to a minimum of $500.00 in damages for each violation. Plaintiff is also entitled to an injunction against future calls. *Id.*

## COUNT II
## Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)
### (Against all Defendants)

85.    Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

86.    At all times relevant, Defendants knew or should have known that its conduct as alleged herein violated the TCPA.

87.    Defendants knew that it did not have prior express consent to make these calls, and knew or should have known that its conduct was a violation of the TCPA.

88.    Because Defendants knew or should have known that Plaintiff had not given prior express consent to receive its autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff pursuant to § 227(b)(3) of the TCPA.

89.     As a result of Defendant's violations, Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

### COUNT III
### Violation of the TCPA, 47 U.S.C. § 227
### (Against all Defendants)

90.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

91.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

92.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[9]

93.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who

---

[9] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

request not to receive telemarketing calls made by or on behalf of that person or entity."

94.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

95.     Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

96.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff suffered actual damages and, under section 47 U.S.C. § 227(c), is entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

97.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief as it relates to the TCPA:

a.  An award of actual and statutory damages for Plaintiff;

b.  As a result of Defendants' negligent violations of 47 U.S.C. §§ 227, *et seq*., Plaintiff seeks $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 277(b)(3)(B);

c.  As a result of Defendants' knowing and/or willful violations of 47 U.S.C. §§ 227, *et seq.*; Plaintiff seeks treble damages, as provided by statute, up to $1,500.00 for each and every violation pursuant to 47 U.S.C. § 277(b)(3)(B) and § 277(b)(3)(C);

d.  An order declaring that Defendants' actions, as set out above, violate the TCPA;

e.  A declaratory judgment that Defendants' telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

f.  An injunction requiring Defendants to cease all unsolicited text messaging activity;

g.   An injunction prohibiting Defendants from using, or contracting

the use of, an automatic telephone dialing system without

obtaining, Plaintiff's consent to receive calls made with such

equipment;

h.   An award of reasonable attorneys' fees and costs; and,

i.   Such further and other relief as the Court deems necessary.to such

actions.

## COUNT IV
## VIOLATION OF THE FTSA, FLA. STAT. § 501.059
### (Against all Defendants)

99.     Plaintiff re-alleges and incorporates the foregoing allegations as if fully

set forth herein.

99.     It is a violation of the FTSA to "make or knowingly allow a telephonic

sales call to be made if such call involves an automated system for the selection or

dialing of telephone numbers or the playing of a recorded message when a connection

is completed to a number called without the prior express written consent of the called

party." Fla. Stat. § 501.059(8)(a).

100.    A "telephonic sales call" is defined as a "telephone call, text message, or

voicemail transmission to a consumer for the purpose of soliciting a sale of any

consumer goods or services, soliciting an extension of credit for consumer goods or

services, or obtaining information that will or may be used for the direct solicitation of

a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(g).

101. "Prior express written consent" means an agreement in writing that:

1. Bears the signature of the called party;

2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a pre recorded voicemail;

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that:

        a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing

of a recorded message when a connection is completed to a number called; and,

b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services. Fla. Stat. § 501.059(1)(g).

102.     Defendants failed to secure prior express written consent from Plaintiff. In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales calls to be made to Plaintiff without Plaintiff's prior express written consent.

103.     Defendants made and/or knowingly allowed the telephonic sales calls to Plaintiff to be made utilizing an automated system for the selection or dialing of telephone numbers.

104.     As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff was harmed and is entitled to a minimum of $500.00 in damages for each violation. Plaintiff is also entitled to an injunction against future calls. *Id.*

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, prays for the following relief as it relates to the FTSA:

a. An award of actual and statutory damages;

b. As a result of Defendants' negligent violations of Fla. Stat. § 501.059, *et seq.*, Plaintiff seeks  $500.00 in statutory damages for each and every violation pursuant to Fla. Stat. § 501.059, *et seq.;*

c. As a result of Defendants' knowing and/or willful violations of Fla. Stat. § 501.059, *et seq*, Plaintiff seeks treble damages, as provided by statute, up to $1,500.00 for each and every violation pursuant to Fla. Stat. § 501.059, *et seq.;*

d. An order declaring that Defendants' actions, as set out above, violate the FTSA;

e. A declaratory judgment that Defendants' telephone calling equipment constitutes an automatic telephone dialing system under the FTSA;

f. An injunction requiring Defendants to cease all unsolicited calling to Plaintiff;

g. An injunction prohibiting Defendants from using, or contracting the use of, an automatic telephone dialing system without obtaining, Plaintiff's consent to receive calls made with such equipment;

h. An award of reasonable attorneys' fees and costs; and,

i.  Such further and other relief as the Court deems necessary.to such actions.

## JURY DEMAND

105.  Plaintiff hereby demands a trial by jury.

## **DOCUMENT PRESERVATION DEMAND**

106. Plaintiff demands that Defendants take affirmative steps and
affirmative measures to retain, collect, and ensure that no potentially relevant
documents, records, or information (including electronic information) are
inadvertently altered, lost, or destroyed. Plaintiff further demands that Defendants
shall preserve all records, lists, electronic databases or other itemization of
telephone numbers associated with Plaintiff and the communication or transmittal
of the calls as alleged herein.

Dated: September 10, 2021

Respectfully Submitted,

**Jaquelyn Zimmerman**

Jaquelyn Zimmerman
4515 31 Place, East
Palmetto, FL 34221
(941) 702 -4577
qente28@gmail.com

30

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed in person with the Clerk of The Court in Tampa, Florida on this 10th day of September, 2021; which once entered by the Clerk will generate Notices of Filing to all parties that have signed up for CM/ECF **I FURTHER CERTIFY** that a true and correct copy was mailed to Defendant Assured Partners Inc.and Defendant FIA LIQUIDATION COMPANY, INC. pursuant to the local rules of the Court.

By:_____
      Jaquelyn Zimmerman